# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ZITO LLC, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-17-1733 |
| CRJ, INC., et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Zito LLC ("Plaintiff") filed suit against CRJ, Inc., Ripken Baseball Camps and Clinics LLC, Ripken Holdings, LLC, Ripken Baseball Academy, LLC, Ripken Enterprises, LLC, and R-C Myrtle Beach, LLC ("Defendants"), alleging two counts of patent infringement in violation of 35 U.S.C. § 271(a) against Defendants. Now pending before the Court is Defendants' Motion for Summary Judgment (ECF No. 54). The issues have been briefed (ECF Nos. 54-1, 55 & 59), and no hearing is required, Local Rule 105.6 (D. Md. 2016). For the reasons explained below, Defendants' Motion will be GRANTED.

## I. Undisputed Facts

Defendants are a group of affiliated entities that operate "baseball tournaments, camps, clinics, and skills training seminars." (Amend. Compl., ECF No. 43, ¶ 17.) As part of their business, Defendants developed, marketed, used, and sold the Ripken Performance Metrics System ("RPM")—i.e., the Accused System. (*Id.*) This system used a Fungoman® Automated Baseball Practice Machine, connected to a computer with software that could be used to dispense

baseballs to players in a manner appropriate for their skill level. (*Id.*) Defendants used the RPM system from at least March 2014 through August 2016.[1]

Arthur Zito is the named inventor of U.S. Patent Numbers 7,398,921 ('921) and U.S. Patent No. 9,443,369 ('369)—the two patents at issue in this suit. Mr. Zito is also the managing member of Plaintiff Zito LLC, which owns the patents at issue. Both patents are entitled "User-Specific Dispensing System" and relate to "systems and methods for on-site, automated dispensing of items to users based on user-specific information." (U.S. Patent No. 7,398,921, ECF No. 54-3, at 7; U.S. Patent No. 9,443,369, ECF No. 54-4, at 11.) Put more simply, the patents describe a specific means of automatically dispensing baseballs to fielders based on the unique characteristics of the fielder.[2]

The patents at issue generally describe a three-part system for dispensing items (e.g., baseballs) to a user. The system comprises: (1) "a user-identifier, such as an RFID tag or a bar code, containing information associated with a user"; (2) "a reader that is capable of reading the user identifier"; and (3) "a processor that is capable of executing instructions to actuate dispensing means that in turn dispenses an item to the user." (ECF No. 54-3, at 7; ECF No. 54-4, at 11.) In short, "the system is designed to dispense an item that is appropriate for the user based on user-specific information." (*Id.*) Notably, both patents describe a "reader" that is "capable of reading data on" "a physical holder of information" (e.g., an RFID card) and then sending that

---

[1] The parties dispute whether the RPM System was still in use in the fall of 2016 and into 2017. As explained *infra*, this dispute is not material.

[2] The patents note that "the dispensed items need not be cylindrical or be limited to any shape" and they "could be intangible, such as a music clip." (ECF No. 54-3, at 8; ECF No. 54-4, at 12.) Indeed, the "preferred embodiment" of the '369 patent is incredibly broad and describes an assortment of gaming and vending systems. However, as explained *infra*, this patent is largely irrelevant based on the undisputed facts. Moreover, the "preferred embodiment" of the 921 patent is that it be employed as a means for "dispensing cylindrical items [e.g., baseballs] to a user." (ECF No. 54-3, at 8.) And Defendants' alleged infringement involved the use of a baseball dispensing machine. Accordingly, the Court focuses on this embodiment of Plaintiff's patented process and system.

data to a "processor" that automatically selects the appropriate item to dispense to a user based upon the user-specific data. (ECF No. 54-3, at 8; ECF No. 54-4, at 12.)

Defendant Ripken Holdings LLC employed Mr. Zito from March 2014 through August 2016 in a marketing role. (Zito Decl., ECF No. 55-2, ¶ 3.) The parties dispute Mr. Zito's specific role with Ripken Holdings; however, they both agree that Mr. Zito was not responsible for and did not operate the Accused RPM System. Mr. Zito did, however, observe the RPM System being used at baseball camps on several occasions. (*Id.* ¶¶ 3, 7, 11.) Specifically, Mr. Zito observed the RPM System in use during a training demonstration in the spring of 2014.[3] According to Mr. Zito, based on his observation,

> it was clear the Defendants used a customized FungoMan machine that used radio frequency identification ("RFID") bands made by Thuzi LLC to read each player's unique ID number to identify when a player ("user") was present and which included the player's age and position (e.g., third base, short stop, second base, etc.) interpreted by the processor to differentiate among players by position and age and thereby determine where and how to dispense baseballs. The base path (dimensions of the bases and infield) was set according to the age of the players and the customized FungoMan machine read this age from the Thuzi band to dispense balls appropriate to those dimensions.

(*Id.* ¶ 7.)

### A. The '921 Patent

The '921 patent was issued on July 15, 2008. The patent contains seventeen claims, only one of which, Claim 1, is independent. Claim 1 describes "[a] system to dispense at least one user-appropriate item on-site, said system comprising:

a. *a readable user-identifier* associated with a targeted user that stores information that is specific to said targeted user . . .;

b. *a reader* configured for reading said user-identifier;

---

[3] Mr. Zito also states that he "recorded use of the RPM System in August 2016 at Ripken 'Cal Ripken Sr.' stadium in Aberdeen, Maryland." (ECF No. 55-2, ¶ 11.) Mr. Zito did not attach this recording to his opposition to Defendants' Motion.

3

    c. *coded instructions* to interpret said user-specific information read by said reader, *automatically select* at least one item of a plurality of items *based on said user-specific information*, and *automatically actuate dispensation* of said selected item to said targeted user *without requiring further intervention* from said targeted user;

    . . . and

    d. *a processor* coupled to said dispensing means and to said reader, said processor configured for executing said instructions *to automatically actuate* said at least one *dispensing means to dispense* said at least one selected item *based upon said interpretation of said user-specific information*[.]

(ECF No. 54-3, at 10 (emphasis added).) In sum, the '921 patent claims a system that includes: (1) a physical storage device (e.g., a card) for storing user-specific information; (2) a reader for reading the stored user-specific information on the physical device; and (3) software instructions and a processor that automatically select an item to dispense based on nothing more than the user-specific information read by the reader and transferred to the processor.

### B. The '369 Patent

The '369 patent was issued on September 13, 2016. This patent is significantly broader in scope than the '921 patent. The '369 patent includes forty-eight claims, three of which—Claims 1, 18, and 41, are independent. As with Claim 1 of the '921 patent, Claim 1 of the '369 patent requires,

> *a reader* configured for reading *a user-identifier* associated with a user and associated with user-specific information of the user;
>
> . . . [and]
>
> *a processor* in communication with the feature and the reader . . . [that] *execute[s] coded instructions to interpret the user-identifier and configure the feature in response to the associated user-specific information* such that the playfield is configured specifically for the user . . . [and the] difficulty of play is appropriate for the user.

(ECF No. 54-4 at 16 (emphasis added).) Likewise, Claim 18 of the '369 patent requires,

4

> *a reader* configured for reading *a user-identifier* associated with a user and associated with at least one personal characteristic of a user[;]
>
> . . . [and]
>
> *a processor* in communication with the feature and the reader . . . [that] *execute[s] coded instructions to interpret the user-identifier and configure the feature in response to the characteristic* such that the amusement is more appropriate for the user.

(*Id.* at 17 (emphasis added).) And Claim 41 similarly provides for,

> *a reader* configured for reading *a user-identifier* associated with a user and associated with user specific information of the user[;]
>
> . . . [and]
>
> *a processor* in communication with the feature and the reader . . . [that] *execute[s] coded instructions to interpret the user-identifier and configure the dispensing device in response to the associated user-specific information* such that . . . the dispensing device is configured specifically for the user."

(*Id.* at 18 (emphasis added).) In other words, the '369 patent also requires (1) a physical storage device (e.g., a card) for storing user-specific information; (2) a reader for reading the stored user-specific information on the physical device; and (3) software instructions and a processor that automatically configure the system based on nothing more than the user-specific information read by the reader and transferred to the processor.

## C. *The Accused RPM System*

According to Defendants, the Accused RPM System was in use only from 2015 to the fall of 2016. (Stringfellow Decl., ECF No. 54-5, ¶ 6.) The Accused System used a Fungoman Machine to dispense baseballs to players based on an "operator manually select[ing] the launch parameters and routine for the player." (*Id.* ¶ 21.) The machine operator would select certain parameters based on the characteristics (e.g., age, skill level, position) of the player. Examples of these parameters included: (1) the base path length (e.g., 50', 60', 70', 90'); and (2) the

5

player's position (e.g., first base, second based, third base, shortstop). (*Id.* ¶ 15–17.) In addition, the operator could select from certain preprogrammed routines. "For example, a '70' SS Fundamental Four' routine would launch three sets of four preprogrammed simulated groundballs (twelve total chances) to the shortstop position in a field based on base path length of 70 feet." (*Id.* ¶ 11.)

The RPM System used a laptop computer that was connected to a Fungoman Machine to select the appropriate parameter and routine for a given user. The laptop used software developed by Fungoman to operate the machine and make the appropriate selections. (*Id.*) The parameters and routines were selected from "pull-down or drop-down menus on the interface screen of the FungoMan's desktop application (e.g. on a connected laptop)." (*Id.*) These routines had to be "*manually selected* on the interface screen by the operator from a pull-down menu." (*Id.* (emphasis added).) In addition, the RPM System used a target with a sensor placed at a relevant target (e.g., first base) to measure the time it took a player to field a launched ball and throw it to the appropriate target. (*Id.* ¶ 13.) The sensor then relayed the time back to the Fungoman Machine and the connected laptop and this information was used to assign a "Ripken Score" to each individual player. (*Id.*)

Defendants also used RFID bracelets to identify players in the RPM System and match the results of a test with a specific player for purposes of generating a Ripken Score. (*Id.* ¶ 8.) The RFID bracelets either included the player's personal information (e.g., first name, last name, date of birth, and parent/guardian email address) or simply an ID number that was linked to this personal information in another application. In order to track player performance, the operator would have a player scan his or her RFID bracelet with an RFID reader connected to the laptop that controlled the Fungoman Machine. (*Id.* ¶ 9.) Inputting player identification information

allowed Defendants "to assign the results of the test to a particular participant." (*Id.* ¶ 8.) These results were then displayed on a "leaderboard" that players could access online. (*Id.*) The Fungoman Machine could also be operated using a single "Test ID" for multiple players when Defendants were not concerned with tracking and recording individual player performance.

Importantly, the player identification information read off the RFID bracelet "was not used by the system to select or trigger a particular routine or adjust in any way how the ball was launched." (*Id.*) "Rather, this information was only used as a tag or label to assign the results of the test to a particular participant." (*Id.*) Indeed, according to Defendants, "[t]he RPM System *could not be operated without the manual selection of launch parameters performed by the operator* on the computer interface." (*Id.* ¶ 14 (emphasis added); *accord id.* ¶ 23 ("Neither the player identification number, nor any information transmitted via RFID bracelet or manually entered, had any impact on the selection of the FungoMan and RPM system parameters, including the launch parameters.").)

## II. Legal Standards

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact" and that he is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If a party carries this burden, then the court will award summary judgment unless the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To

carry these respective burdens, each party must support its assertions by citing specific evidence from the record. Fed. R. Civ. P. 56(c)(1)(A). The court will assess the merits of the motion, and any responses, viewing all facts and reasonable inferences in the light most favorable to the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

## III. Analysis

Defendants' argument for summary judgment essentially proceeds in two parts. First, they contend that Plaintiff has no leg to stand on with respect to instances when the RPM System did *not* use an RFID reader. According to Defendants, this alone entitles them to summary judgment on Plaintiff's '369 patent claims because Defendants never used the RPM System with an RFID reader after that patent issued. Second, Defendants argue that they are entitled to summary judgment even for those instances when an RFID reader was used, because the information read by the reader was not used by a processor to automatically select an item to dispense—a necessary element of each independent claim in both patents. On the contrary, at all times the Fungoman Machine operator was required to manually select the parameters and routine for a given user. The Court agrees with Defendants in both regards and therefore will grant their Motion.

### A. Infringement

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). "[T]o find infringement, the accused device must contain 'each limitation of the claim, either literally or by an equivalent.'" *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1379 (Fed. Cir. 2008) (quoting

*Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005)). Although "infringement . . . is a question of fact . . . . [,] a court may determine infringement on summary judgment when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *EMD Millipore Corp. v. AllPure Techs., Inc.*, 768 F.3d 1196, 1201 (Fed. Cir. 2014) (internal citations and quotation marks omitted).

"Patent infringement determinations require a two-step analysis: (1) the asserted claims of the patent must be properly construed to determine their meaning and scope; and (2) the claims as properly construed must be compared to the allegedly infringing device." *Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 409 F. Supp. 2d 643, 653–54 (D. Md. 2006) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc)). Claims are construed from the perspective of a person of ordinary skill in the field of invention. *Hoechst Celanese Corp. v. B.P. Chems. Ltd.*, 78 F.3d 1575, 1578 (Fed. Cir. 1996). "In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves . . . ." *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338 (Fed. Cir. 2003).

Here, the parties focus exclusively on the second step of the infringement analysis. The parties do not dispute the meaning of any terms in the claims. Rather, they seemingly are in full agreement as to the proper claim construction and simply dispute whether Defendants' RPM system contained each limitation of the independent claims at issue.

### B. '921 Patent

The '921 patent contains one independent claim—Claim 1. The essential elements of that claim include, *inter alia*, (1) a user-identifier—i.e., a physical storage device (e.g., a card) for

storing user-specific information; (2) a reader for reading the stored user-specific information on the physical device; and (3) software instructions and a processor "to interpret [the] user-specific information read by [the] reader" and "automatically" configure the system specifically for the user based on nothing more than the "interpretation of [the] user-specific information." (ECF No. 54-3, at 10.) In other words, the claim requires that the system read user-specific information from a device provided by the user and then automatically dispense baseballs in an appropriate, user-specific manner based solely on the information read.

The RPM system does not do this. Defendants concede that they used an RFID bracelet and reader with the RPM system to identify individual players and track their performance. However, none of the "information transmitted via RFID bracelet . . ., had *any* impact on the selection of the FungoMan and RPM system parameters, including the launch parameters." (ECF No. 54-5, ¶ 23.) Rather, the RPM System required an operator to manually select parameters and a specific testing routine. Indeed, Defendants contend that "[t]he RPM System *could not be operated without the manual selection* of launch parameters performed by the operator on the computer interface." (*Id.* ¶ 14 (emphasis added).) And the system operated in the exact same manner regardless of whether user-specific information was read prior to operation.

In sum, the RPM System does not infringe the '921 patent because it "cannot automatically select or adjust how a ball is to be thrown based on any player-specific information that is read or otherwise input into the system." (*Id.* ¶ 23.)

Plaintiff offers little in rebuttal to Defendants' compelling evidence for summary judgment. Plaintiff's entire argument in opposition consists of barely three pages. Moreover, Plaintiff simply repeats the same conclusory statement in his very brief argument: "The forgoing

information from Defendants' own documents combined with Mr. Zito's sworn testimony of how the RPM System operates shows that the RPM System relies on player specific information that is read from an RFID band to run each test." (ECF No. 55, at 15, 17, 18.)

It is not clear what "information from Defendants' own documents" Plaintiff is referring to because Plaintiff fails to identify any documents with specificity in his argument. That said, Plaintiff is presumably referring to several documents Defendants produced during discovery that were included in Plaintiff's opposition motion. None of these documents create a genuine dispute of material fact and at least one actually supports Defendants' position. First, Plaintiff contends that Defendants' RPM Manual "create[s] a genuine issue of material fact about whether player information is read into the RPM System and *whether the System relies on the information to run its dispensing programs* and launch baseballs." (ECF No. 55, at 12 (emphasis added).) In support, Plaintiff points to one line in the Manual under the heading "FungoMan Server Setup," which instructs the operator to "[h]ave the player scan his ID Band, load player, then run the test by clicking "launch ball" for each play." (*Id.* (citing RIPKEN00000206).) As an initial matter, this instruction is entirely consistent with Defendants' description of the RPM System's use of player identification information. It is not reasonable to infer, based solely on this sentence, that the information on the player's ID Band is used by the RPM System to automatically determine how to dispense baseballs to the player. More importantly, however, Plaintiff ignores the instruction immediately preceding this in the Manual. That instruction tells the operator to "[l]og in to the app, then proceed to the "test" tab, [and] *choose what routine is needed for the player*." (*Id.* (emphasis added).) This instruction directly refutes Plaintiff's contention and lends strong support to Defendants' position, yet Plaintiff makes no attempt to rebut it.

11

Plaintiff also cites to another portion of the RPM Manual that addresses the "Thuzi Setup" (i.e., the RFID wrist band). The manual simply instructs the operator to register the player and link his or her personal information to an "ID Band." Again, this is entirely consistent with Defendants' description of their non-infringing use of the RPM System. Even drawing all inferences in Plaintiff's favor, this statement in the manual does not create a genuine dispute of material fact.

Finally, Plaintiff points to two documents produced by Defendants as evidence that Defendants in fact used the RPM System from 2012 to 2017, not from 2014 to 2016 as claimed by Defendants. (*Id.* at 14–15 (citing RIPKEN00005575; RIPKEN00012020).) This is not a material dispute of fact. The timeframe during which Defendants used the RPM System has no bearing on the manner in which it operated and Plaintiff makes no attempt to show otherwise. Nor do the timeline documents cited by Plaintiff suggest in any way that Defendants used the RPM System in a manner that infringed Plaintiff's patents.

The only other evidence Plaintiff puts forth is the self-serving declaration of Mr. Zito.[4] According to Mr. Zito, he observed a training demonstration of the RPM System in which "*it was clear* the Defendants used a customized FungoMan machine that used radio frequency identification ("RFID") bands . . . which included the player's age and position (e.g., third base, short stop, second base, etc.) interpreted by the processor to differentiate among players by position and age and thereby determine where and how to dispense baseballs." (ECF No, 55-2, ¶ 7 (emphasis added).) Mr. Zito goes on to say that "[t]he base path . . . *was set* according to the

---

[4] Although Rule 56 of the Federal Rules of Civil Procedure certainly permits parties to support their claims and defenses with, inter alia, affidavits and declarations, such statements—without corroborating evidence—are disfavored as mechanisms for defeating a summary-judgment motion. *See Williams v. Lazer Spot, Inc.*, Civ. No. BPG–13–1850, 2014 WL 5365581, at *3 (D. Md. Oct. 21, 2014) ("Without further evidence, self-serving testimony is insufficient to defeat summary judgment."); *Singletary v. Allstate Ins. Co.*, No. 2:12–cv–940–RMG, 2013 WL 6145277, at *6 (D.S.C. Nov. 21, 2013) ("A self-serving affidavit, without more, is not sufficient to defeat summary judgment."); *accord Nat'l Enters., Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000).

age of the players and the customized FungoMan Machine would simulate line drives, pop flies, stretch grounders to the gap, slow rollers, etc., as appropriate for the infield position of the player." (*Id.* (emphasis added).) The declaration, however, is as notable for what it does *not* say as for what it does say. Mr. Zito does not say why "it was clear" that a processor was automatically determining how to dispense baseballs based on user-specific information read off of a player's RFID band. Mr Zito does not say who or what "set" the base path. And Mr. Zito does not say whether there was an operator for the RPM System and, if so, what the operator did or did not do prior to the baseballs being launched. In short, Plaintiff cannot rely on such a conclusory, self-serving declaration to generate a material dispute of fact.[5]

### C. '369 Patent

The '369 patent contains three independent claims—Claims 1, 18, and 41. Each of these claims requires: (1) a user-identifier—i.e., a physical storage device (e.g., a card) for storing user-specific information; (2) a reader for reading the stored user-specific information on the physical device; and (3) software instructions and a processor "to interpret the user identifier" and automatically configure the system specifically for the user based on nothing but the user-specific information read by the reader and transferred to the processor. The essential elements of these claims are materially indistinguishable from Claim 1 of the '921 patent. Accordingly, Defendants' use of the RPM System did not infringe these claims for all of the same reasons stated *supra* with regard to the '921 patent.

Moreover, Defendants used the RPM System only once after the '369 patent was issued. During this isolated use, Defendants did not track individual player performance and therefore

---

[5] Notably, Plaintiff declined to pursue discovery that could have substantiated the conclusory claims in his declaration. Plaintiff did not take any depositions regarding the operation of the RPM System. (ECF No. 54-1, at 3 n.1.) Moreover, Plaintiff apparently "did not use any of its allotted requests to inspect or operate the accused RPM System." (*Id.* at 3.)

did not use an RFID reader. (ECF No. 54-5, ¶ 10.) Thus, because Defendants never even used the RPM System with a reader following the issuance of the '369 patent, this provides an independent basis for granting their Motion as to Plaintiff's infringement claims for the '369 patent.[6]

*IV. Conclusion*

For the foregoing reasons, an Order shall enter GRANTING Defendants' Motion for Summary Judgment (ECF No. 54).

DATED this 9th day of May, 2018.

BY THE COURT:

/s/
James K. Bredar
Chief Judge

---

[6] Immediately prior to the Court issuing this Memorandum and the corresponding Order, Plaintiff filed a supplemental exhibit in support of its opposition to Defendants' Motion. (ECF No. 61.) The exhibit consisted of 940 pages of actions (e.g., "Writing Home :: 1"; "Trying to set Attendee"; "Thuzi: Current Event is: Labor Day"; "Running Routine: 70' SS Fundamental Four"; "Ball Order"; "Position: -16"; "Elevation: -15") with date and time stamps. Plaintiff provides no context for this extensive exhibit and fails to identify its source with any specificity. Thus, the Court is left to hypothesize as to exactly where it came from and what it all means—a tall task given the complete lack of context or explanation for the countless "actions"). The Court assumes that the exhibit is a read out from the Fungoman machine used by Defendants or perhaps the laptop computer used to control the machine.

In any event, the exhibit has no bearing on the Court's judgment. First, the exhibit is untimely by 76 days. "The Court generally does not consider a submission filed after a deadline if not accompanied by a motion to enlarge the time for filing." *King v. Washington Metro. Area Transit Auth.*, No. CV TDC-14-2752, 2016 WL 8716253, at *2 (D. Md. Feb. 26, 2016) (citing Fed. R. Civ. P. 6(b)(1)(B)). Moreover, in order for the Court to excuse a late filing, "the moving party must show 'excusable neglect.'" *Id.* (quoting Fed. R. Civ. P. 6(b)(1)(B)). Plaintiff has not filed a motion for an extension of time nor has it offered *any* reason whatsoever for filing this lengthy exhibit nearly three months late. Accordingly, the exhibit will be stricken and the Court will not consider it. But, even if the Court were to consider the exhibit, it still would not change the outcome. Nothing on the face of the exhibit (and no context whatsoever is provided) is sufficient to generate a genuine dispute of material fact. Rather, like the other documents cited by Plaintiff in its opposition, the exhibit appears to be consistent with Defendants' explanation of how the RPM System worked in a non-infringing manner.